57 CCPA

**Application of Ernst RUEGG.**
**Patent Appeal No. 8301.**

United States Court of Customs
and Patent Appeals.
May 28, 1970.

Austin P. Dodge, Dodge & Sons, Arlington, Va., attorney of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the rejection of claim 1 of application serial No. 542,695, filed April 14, 1966, and entitled "Pressurized Centrifuge." No claim is allowed. We affirm.

The claimed invention and background thereof are described in appellant's application as follows (emphasis ours):

This invention relates to a centrifuge, in which the material to be centrifuged must be kept in an atmosphere of gas under pressure.

In known centrifuges of this kind, the centrifuge housing containing the centrifugal drum is of pressure-tight construction and is filled with gas under pressure. A stuffing box is provided at the exit of the centrifugal drum shaft from this pressure-tight housing.

Owing to the pressure-tight construction, the housing itself becomes complicated, all covers must be reinforced and their connection to the housing must be pressure-tight; the stuffing box at the exit of the centrifugal drum shaft is large, difficult of access and results in permanent frictional loss. Above all, however, the pressure-tight centrifuge is a special construction, which is much more expensive to produce than a standard machine.

It is the aim of this invention to obviate all these disadvantages. *In a centrifuge of the kind hereinbefore described, there is provided for this purpose according to the invention a pressure container, surronding the centrifuge, confining an atmosphere of gas under pressure and consisting of at least two parts.*

In this way, a simple, cheap standard machine can be used for material which is to be centrifuged in an atmosphere of gas under pressure. In addition, the pressure container can be given directly a form which is favourable from the point of view of strength. For example, its wall may be spherical or the pressure container may have the shape of a boiler, i.e. a hollow cyclinder with convex ends. Accordingly, the pressure container may be of light and cheap construction.

Appellant's brief further explains that he proposes placing a *"complete* conventional centrifuge" (one in which the housing is *not* sealed) within a least a two-part, vapor-tight pressure container

and that the container be charged with gas under pressure. The gas leaks into the interior of the unsealed housing of the centrifuge proper through access doors, shaft bearings and any other opening therein.

Fig. 1 is representative of the embodiments disclosed:

Fig. 1

[A1739]

The most significant features of this embodiment are described as follows:

The centrifuge 1 is surrounded by a pressure container 5 confining an atmosphere 6 of gas under pressure, within which are situated both the interior and also the external surroundings of the centrifuge 1.

The pressure container 5, the walls of which are substantially spherical, is subdivided into four parts, namely a spherical part 7, its two spherical covers 8 and 9 and the foundation bed 4, acting as lower wall of the container 5. * * *

* * * * * *

A pipe 14 for supplying the material to be centrifuged and passing through the wall of the spherical part 7 leads into the pressure container 5, and incorporated in said pipe outside the pressure container 5 are a pump 15 and a movable pipe part 16.

Passing through the foundation plate 4 is a pipe 17 for the discharge of the centrifuged solid material * *. A correspondingly equipped pipe 20 serves for the discharge of the centrifuged liquid. The compressed gas can be admitted to the pressure container 5 through a pipe 21, the air in the container 5 escaping through vent valves 22 or 23. Suitable openings 24 and 25 in the centrifuge housing ensure that, in addition to the surroundings of the centrifuge, its interior is also definitely filled with gas.

The rejected claim reads:

1. In combination a centrifuge comprising a housing and a rotary centrifugal drum arranged in said housing, the housing providing flow paths for the leakage of gas to and from its interior; a vapor-tight pressure container consisting of at least two parts and which is separate from and enclo-

ses the housing of the centrifuge; and means for supplying gas under pressure into said container.

Claim 1 is rejected under 35 U.S.C. § 103 as unpatentable over the following United States patent:[1]

Hewitt 581,206 Apr. 20, 1897

Hewitt discloses an apparatus intended "to thoroughly aerate * * * beer while it is in the form of a highly-attenuated film." The apparatus is described as "a *centrifugal machine* of peculiar construction adapted to reduce the liquid to the form of an extremely thin film, the centrifugal machine being operated in a *closed vessel* suitable for the required pressure." (Emphasis ours.) The parties direct their attention to Fig. 1 of Hewitt:

*Fig: 1.*

[A1740]

The pressure vessel 1, which surrounds the "centrifugal machine," is provided at the bottom with a combined stuffing-box and journal-box 3 through which passes the upper end of the driving shaft 4. The centrifuge bowl 2 is carried by shaft 4. Supported by the pressure vessel 1 is a hood 11 which extends outwardly and downwardly from a point inside the rim of the centrifuge bowl. In operation, beer is supplied to the bowl 2 by pipe 10 extending through the top of the vessel. When the bowl is rotated with a sufficient velocity, the beer spreads out on the walls thereof and then apparently is discharged onto the undersurface of the hood 11.[2]

---

1. Claim 1 is also rejected under 35 U.S.C. § 103 as unpatentable over two other United States patents:
   Bird et al. 2,312,829 Mar. 2, 1943
   Solvik 3,013,005 Dec. 12, 1961
   In view of our disposition of the first of these rejections, we need not consider the second.

2. It will be observed that the source of power (not shown) for the apparatus is located outside the pressure vessel. This is also true of one embodiment shown in appellant's drawings.

The examiner and the board were of the opinion that terms "centrifuge," "housing," and "pressure container" used in claim 1 "do not significantly define over" Hewitt's bowl 2, hood 11 and pressure vessel 1, respectively. Thus, the examiner stated:

* * * the device of Hewitt utilizes centrifugal force and hence is deemed to be a centrifuge. The lack of separation of materials in Hewitt renders it no less a certrifuge since the use of the device is not structure. However, if materials of different density are introduced into the device of Hewitt, it is obviously adapted [to] and would separate the materials in the same manner as any conventional solid-bowl centrifuge. The device of Hewitt further meets the definition of the term centrifuge * * * since it causes the liquid in bowl 2 to follow an unnatural path in opposition to the force of gravity. * * * the vessel, and the hood 11 in Hewitt are "separate" *and* connected. The term "separate" does not prohibit connection between the parts. Further, the term "housing" does not necessarily require a closed structure. This term is readable on the open cover element 11 in Hewitt.

Appellant contends, first, that "even though Hewitt has a rotary bowl from which liquid is flung by centrifugal action, his machine is *not* a centrifuge within the meaning of that term as used in applicant's specification and claim." He then cites Webster's Seventh New Collegiate Dictionary wherein "centrifuge" is defined as "a machine utilizing centrifugal force for separating substances of different densities, for removing moisture, or for *simulating gravitational effects*," (our emphasis) and indicates that his invention is concerned only with a machine utilizing centrifugal force for the first of these purposes. Were we to accept appellant's narrow definition of "centrifuge," his case would be none the stronger since the rejection here is under § 103, not § 102, and since one skilled in the art surely would not consider the teachings of Hewitt to be limited to the specific centrifugal machine with which he was concerned.

Appellant also contends that Hewitt "shows no part which corresponds to the pressure container recited in applicant's claim" because removal of Hewitt's vessel 1 "eliminates lateral support for the combined bearing and stuffing box 3" and "removes support for the hood 11 * * *." We note, however, that in the apparatus shown in appellant's Fig. 1 removal of the foundation bed 4 which in appellant's application is said to act as the "lower wall of container 5" would remove support for all the apparatus contained therein. Moreover, we agree with the examiner that appellant's term "separate" as used in the claim to define the relationship of the "container" and "housing" does not proscribe all connection between the two.

Appellant's remaining argument is that the hood 11 of Hewitt is not a "housing" because it does not provide "flow paths for the leakage of gas to and from its interior" as called for by the claim. Appellant's application makes it clear, however, that the "flow paths" in the housing need not be of any particular form so long as the gas has access to and from its interior. It being apparent that in Hewitt the gas must and does have such access through the open ends of the hood, this argument clearly is without merit.

The decision of the board is affirmed.

Affirmed.